**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISON**

**Eddie Shannon,**

>    **Plaintiff,**

v.                                                    **Case No.**

**Southern Mechanical, LLC,**

>    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **Eddie Shannon** ("Plaintiff" or "Shannon"), by and through the undersigned counsel, hereby files this complaint against Defendant, **Southern Mechanical, LLC** ("Defendant" or "Southern Mechanical"), and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for sex discrimination and retaliation arising from Southern Mechanical's disparate treatment and termination of Shannon, a male employee, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01 et seq.

2.    Southern Mechanical subjected Shannon to materially different standards than his female supervisor, failed to correct the supervisor's conduct after Shannon complained, and terminated Shannon shortly after his written complaint seeking urgent intervention from Human Resources.

3.    Southern Mechanical later offered shifting and expanded reasons for the termination that were not documented or communicated to Shannon before his discharge, while

declining to impose comparable discipline on the female supervisor for serious workplace-policy violations.

## JURISDICTION AND VENUE

4.      This Court has federal-question jurisdiction over Shannon's Title VII claims under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

5.      This Court has supplemental jurisdiction over Shannon's related FCRA claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as his Title VII claims.

6.      Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because Southern Mechanical maintains operations in Tampa, Florida, and the unlawful employment practices alleged herein occurred in Hillsborough County, Florida, within the Tampa Division of the Middle District of Florida.

## PARTIES

7.      Plaintiff is an adult male and a resident of Hillsborough County, Florida.

8.      Defendant is a limited liability company authorized to conduct, and conducting, business in Florida, including in Hillsborough County.

9.      Defendant provides plumbing and HVAC construction services for apartment and multifamily construction projects.

10.      Southern Mechanical represented during the EEOC proceeding that it employed approximately seventy-eight employees. At all material times, it employed at least fifteen employees and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

11.      At all material times, Defendant employed at least fifteen employees and was an "employer" within the meaning of the FCRA, Fla. Stat. § 760.02(7).

12. At all material times, Plaintiff was an "employee" within the meaning of Title VII and the FCRA.

## ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT

13. Shannon timely filed a Charge of Discrimination against Southern Mechanical with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2025-01191, and requested that the Charge be dual-filed with the Florida Commission on Human Relations.

14. The Charge alleged discrimination because of sex and retaliation and identified Shannon's termination and the events leading to it.

15. The EEOC issued Shannon a Notice of Right to Sue and terminated its processing of the Charge after more than 180 days had passed.

16. This action is timely filed within ninety days of Shannon's receipt of the Notice of Right to Sue.

17. Shannon has satisfied all conditions precedent to this action, or those conditions have occurred, been performed, or been waived.

## FACTUAL ALLEGATIONS

18. Defendant recruited Plaintiff while he was employed by another company and offered him a Project Manager position in its Tampa operations.

19. Plaintiff did not apply for the position through Southern Mechanical's ordinary application process; Southern Mechanical contacted and recruited him based on his construction and plumbing experience.

20. Defendant offered Plaintiff a start date of May 27, 2024, the title "OPS-PROM – Project Manager," an annual salary of approximately $90,000, a monthly vehicle allowance, paid time off, eligibility for health and retirement benefits, and potential bonus participation.

21. Plaintiff accepted the offer and began working for Defendant on or about May 27, 2024.

22. As Project Manager, Plaintiff reported to Southern Mechanical Vice President Greg Balentine.

23. Southern Mechanical hired Shannon with knowledge that he was transitioning from residential construction to multifamily construction. Balentine and April Woodward represented that Shannon would receive training, coaching, and assistance with Southern Mechanical's software and practices during that transition.

24. Defendant assigned Plaintiff to projects that had experienced disorganization and turnover in project-management and superintendent roles.

25. Plaintiff performed construction-management and plumbing-related duties and brought substantial field knowledge to his work.

26. Effective July 15, 2024, Defendant changed Plaintiff's position from Project Manager to Superintendent and changed his compensation from salary to $36.00 per hour.

27. Defendant characterized the change as a ninety-day opportunity for Plaintiff to perform as a Superintendent.

28. After the change, Shannon worked as the plumbing Superintendent assigned to the Manor West project in Tampa and reported to April Woodward, a female Project Manager.

29. Ms. Woodward lacked Shannon's field experience in plumbing and construction and reacted negatively when Shannon identified or corrected plumbing and field issues.

30. From the beginning of their reporting relationship, Ms. Woodward treated Plaintiff with hostility, criticized him to Balentine, and attempted to discredit his competence even when praising the same work directly to Plaintiff.

31.     Ms. Woodward sent Plaintiff hostile communications and repeatedly blamed him for problems resulting from directions she had given or decisions she had made.

32.     On multiple occasions, Woodward instructed Shannon to take an action and later criticized or sought to discipline him when the action had an unfavorable result.

33.     Plaintiff maintained emails, text messages, and other documentation reflecting Woodward's instructions and her subsequent attempts to shift responsibility to him.

34.     Plaintiff complained about Ms. Woodward's discriminatory conduct and disparate treatment to Balentine's attention and showed Balentine documentation supporting his concerns.

35.     Rather than investigate impartially or correct Ms. Woodward's conduct, Balentine disclosed Shannon's concerns to Ms. Woodward, communicated jointly with Ms. Woodward about Shannon, and continued to protect Ms. Woodward from accountability.

36.     Southern Mechanical held Plaintiff and Ms. Woodward to materially different standards.

37.     During Plaintiff's employment, Ms. Woodward was routinely absent or late, behaved unprofessionally in the workplace, and used sexually inappropriate language without being subjected to comparable discipline.

38.     Ms. Woodward also left a nine-millimeter firearm in a company vehicle for an extended period before another Superintendent found it.

39.     Possession or storage of a firearm in a company vehicle violated Southern Mechanical's stated prohibition against weapons on company property.

40.     Southern Mechanical did not terminate Ms. Woodward for that serious safety and workplace-policy violation and, on information and belief, did not subject her to discipline comparable to the discipline imposed on Plaintiff.

41.     By contrast, Southern Mechanical relied on a vehicle-related incident involving Plaintiff as a stated reason for terminating him.

42.     In that incident, Plaintiff permitted a subcontractor to use a company vehicle to move project trash to a disposal location several stories away while Plaintiff was attempting to complete the work assigned to him.

43.     The vehicle incident occurred weeks before Plaintiff's termination.

44.     Southern Mechanical did not terminate Shannon when it learned of the incident, did not give him a written warning at that time, and did not inform him that the incident placed his employment in jeopardy.

45.     Plaintiff reasonably understood that a first vehicle-policy issue was subject to progressive discipline rather than immediate termination.

46.     Before his termination, Southern Mechanical never provided Plaintiff a written performance warning, performance-improvement plan, final warning, or other contemporaneous notice that his employment was in jeopardy because of daily reports, Procore use, subcontractor time, change orders, materials purchases, or any other performance issue later asserted by Defendant.

47.     Southern Mechanical did not identify any contemporaneous complaint from a builder or client about Plaintiff's performance before terminating him.

48.     Despite Southern Mechanical's later characterization of Shannon's performance, he continued to work in the same field after his discharge and performed successfully without similar conflict.

49.     On October 2, 2024, a dispute arose concerning Ms. Woodward's directions and her effort to blame Plaintiff for problems he maintained she had caused.

50. Plaintiff had documentation showing that he followed Ms. Woodward's directions and that her account of the events was inaccurate.

51. Plaintiff believed that Southern Mechanical was protecting Ms. Woodward and holding him to a different standard because he was male and Ms. Woodward was female.

52. Plaintiff opposed that disparate treatment and sought intervention from Human Resources.

53. On October 2, 2024, Plaintiff sent a written protected complaint to an address he understood to be an appropriate Human Resources contact.

54. In the complaint, Plaintiff identified himself and his project, reported that Ms. Woodward and Balentine were blaming him for a problem despite documentation that he was not responsible, stated that he feared he would be fired and retaliated against, and urgently requested that Human Resources contact him.

55. Plaintiff further explained that he had done what he had been asked to do and had repeatedly shown Balentine instances in which Ms. Woodward made false statements to cover for her lack of professionalism or knowledge.

56. Southern Mechanical did not contact Shannon to investigate the complaint, obtain his supporting documentation, or hear his account before terminating him.

57. Instead, Defendant terminated Plaintiff later that same day, shortly after he submitted the protected complaint.

58. The extraordinary temporal proximity between Plaintiff's complaint and termination supports an inference that the complaint was a motivating factor and but-for cause of the termination.

59. At or around the time of termination, Defendant identified a company-vehicle violation as the official reason for Plaintiff's discharge.

60. The vehicle incident had occurred weeks earlier and had not resulted in contemporaneous progressive discipline or notice that Shannon would be terminated.

61. After Plaintiff filed his EEOC Charge, Southern Mechanical expanded its explanation and asserted numerous additional performance reasons, including alleged failures involving daily reports, Procore, subcontractor time, extra-work approval, change orders, and materials purchases.

62. Southern Mechanical had not previously documented or communicated those asserted deficiencies to Shannon through written discipline, a performance-improvement plan, or a final warning.

63. Southern Mechanical's later position also asserted that Shannon had misrepresented his qualifications when hired, even though Southern Mechanical had recruited Shannon from other employment, offered him a $90,000 Project Manager position, and represented that it would train and assist him in transitioning to multifamily construction and its software systems.

64. Defendant's post-termination expansion of its asserted reasons, the lack of contemporaneous discipline, its failure to investigate Plaintiff's complaint, and its more favorable treatment of Ms. Woodward support a reasonable inference that the stated reasons were pretextual.

65. Defendant knew that other employees had complained about or experienced conflict with Ms. Woodward but continued to protect her and failed to take effective corrective action before Plaintiff's termination.

66. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Plaintiff's federally and state-protected rights.

67. As a direct and proximate result of Defendant's conduct, Plaintiff lost wages, employment benefits, and other compensation and suffered emotional distress, inconvenience, humiliation, loss of dignity, and other nonpecuniary harm.

## COUNT I —TITLE VII VIOLATION
### (SEX DISCRIMINATION)

68. Plaintiff realleges and readopts the allegations set forth in Paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69. Plaintiff is a member of a protected class under Title VII due to his sex.

70. Plaintiff was qualified to perform the Superintendent position.

71. Plaintiff was subjected to disparate treatment on account of his sex.

72. Defendant subjected Plaintiff to adverse employment actions, including heightened scrutiny, disparate discipline, and termination.

73. Defendant treated Ms. Woodward, a female manager outside Plaintiff's protected class, more favorably by excusing or failing to impose comparable discipline for serious policy violations, including a weapons-policy violation involving a company vehicle, repeated attendance issues, and unprofessional workplace conduct.

74. Defendant, in contrast, relied on a weeks-old vehicle incident and later-asserted, undocumented performance concerns to terminate Plaintiff.

75. Defendant's disparate enforcement of its policies, protection of Ms. Woodward, lack of contemporaneous discipline, failure to investigate Plaintiff's documented concerns, and shifting post-termination explanations plausibly support an inference that Plaintiff's sex was a motivating factor in the decision to terminate him.

76. Southern Mechanical intentionally discriminated against Shannon because of sex in violation of Title VII, 42 U.S.C. § 2000e-2(a).

77. As a direct and proximate result, Shannon suffered the damages alleged above.

78. Defendant's actions were willful and done with malice.

**WHEREFORE**, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issues and that this Court take jurisdiction over the case;

(c) An injunction restraining continued violation of law enumerated herein;

(d) Compensation for lost wages, benefits, and other remuneration;

(e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

(f) Compensatory damages, including emotional distress, allowable at law;

(g) Punitive damages;

(h) Prejudgment interest on all monetary recovery obtained;

(i) All costs and attorney's fees incurred in prosecuting these claims; and

(j) For such further relief as the Court deems just and equitable.

## COUNT II — TITLE VII RETALIATION

79. Plaintiff realleges and readopts the allegations of paragraphs 1 through 67 of this Complaint, as though fully set forth herein.

80. Plaintiff is a member of a protected class under Title VII due to his sex.

81. Plaintiff exercised or attempted to exercise his rights under Title VII, thereby engaging in protected activity under Title VII.

82. Plaintiff opposed what he reasonably and in good faith believed to be sex-based disparate treatment, including Defendant's preferential protection of Ms. Woodward and its effort to hold Shannon responsible for conduct and decisions attributable to her.

83. Plaintiff communicated his opposition internally, provided or offered documentation supporting his concerns, and requested urgent Human Resources intervention on October 2, 2024.

84. Plaintiff's complaint constituted protected activity under Title VII.

85. Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by terminating his employment.

86. Defendant has taken material adverse action against Plaintiff.

87. Defendant's actions were willful and done with malice.

88. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) That this Court enter a declaratory judgment against Defendant, stating that Defendant interfered with Plaintiff's rights under Title VII;

(d) Compensation for lost wages, benefits, and other remuneration;

(e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, and all benefits;

(f) Front pay;

(g) Any other compensatory damages, including emotional distress, allowable at

law;

(h) Punitive damages;

(i) Prejudgment interest on all monetary recovery obtained.

(j) All costs and attorney's fees incurred in prosecuting these claims; and

(k) For such further relief as this Court deems just and equitable.

## COUNT III – FCRA VIOLATION (SEX DISCRIMINATION)

89.    Plaintiff re-alleges and readopts the allegations of paragraphs 1 through 67 of this Complaint as though fully set forth herein.

90.    Plaintiff is a member of a protected class under the FCRA due to his sex.

91.    Plaintiff was qualified for his position.

92.    Defendant subjected Plaintiff to adverse employment actions, including heightened scrutiny, disparate discipline, and termination.

93.    Defendant treated Ms. Woodward, a female manager outside Plaintiff's protected class, more favorably by excusing or failing to impose comparable discipline for serious policy violations, including a weapons-policy violation involving a company vehicle, repeated attendance issues, and unprofessional workplace conduct.

94.    Defendant's disparate enforcement of its policies, protection of Ms. Woodward, lack of contemporaneous discipline, failure to investigate Plaintiff's documented concerns, and shifting post-termination explanations plausibly support an inference that Plaintiff's sex was a motivating factor in the decision to terminate him.

95.    Southern Mechanical intentionally discriminated against Shannon because of sex in violation of the FCRA, Fla. Stat. § 760.10(1)(a).

96.    Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

97.    Plaintiff was injured due to Defendant's willful violations of the FCRA, to which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff requests that this Court:

(a) Enter a judgment that Defendant retaliated against Plaintiff because Plaintiff exercised or attempted to exercise Plaintiff's rights under the FCRA;

(b) Enjoin and permanently restrain Defendant from further violations of the FCRA;

(c) Award back pay to Plaintiff plus interest and all benefits;

(d) Award reasonable attorney's fees and costs to Plaintiff; and

(e) Additional relief to which Plaintiff is entitled, including equitable relief.

## COUNT IV – FCRA RETALIATION

98.    Plaintiff re-alleges and readopts the allegations of paragraphs 1 through 67 of this Complaint as though fully set forth herein.

99.    Plaintiff is a member of a protected class under the FCRA.

100.    Shannon opposed what he reasonably and in good faith believed to be sex-based disparate treatment, including Defendant's preferential protection of Ms. Woodward and its effort to hold Plaintiff responsible for conduct and decisions attributable to her.

101.    Plaintiff engaged in protected activity when he submitted a written complaint to Human Resources.

102.    Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by terminating Plaintiff's employment.

103.   Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

104.   Plaintiff was injured due to Defendant' willful violations of the FCRA, to which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff requests that this Court:

a) Enter a judgment that Defendant retaliated against Plaintiff because Plaintiff exercised or attempted to exercise Plaintiff's rights under the FCRA;

b) Enjoin and permanently restrain Defendant from further violations of the FCRA;

c) Award back pay to Plaintiff plus interest and all benefits;

d) Award reasonable attorney's fees and costs to Plaintiff; and

e) Additional relief to which Plaintiff is entitled, including equitable relief.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

Dated this 12th day of August 2026.

Respectfully submitted,

*/s/ Samuel Doxsee*

**SAMUEL DOXSEE**
Florida Bar Number: 127318
**CHAD A. JUSTICE**
Florida Bar Number: 121559
**JUSTICE LITIGATION ASSOCIATES, PLLC**
1205 N Franklin St
Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@justicelitigation.law
E-mail:sam@justicelitigation.law
**Attorneys for Plaintiff**